UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KARL G. BARTON,

                  Plaintiff,                       Case No. 2:23-cv-11423

v.                                    Honorable Susan K. DeClercq
                                       United States District Judge

CITY OF ANN ARBOR et al.,

                  Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (ECF No. 17)

Karl Barton is a concerned citizen who wanted to increase the accountability and transparency of the Ann Arbor Police Department. Although he made great efforts to learn the Department's internal policies and reach out to elected and appointed government officials about improving the visibility of these policies, these efforts went largely ignored. After months of participating in public meetings and trying to sit down with the City Administrator, Barton was ultimately served with a trespass notice limiting his access to City Hall.

Barton alleges that the trespass notice violated his First Amendment rights and that it was issued in retaliation for his exercise of those rights. He also alleges violations of due process and equal protection under the Fourteenth Amendment, as well as a claim for intentional infliction of emotional distress.

But as explained below, even after amending his complaint, Barton still falls short of pleading sufficient facts for this Court to infer that his First and Fourteenth Amendment rights were violated. He also has failed to plead sufficient facts for his claim of intentional infliction of emotional distress. And even where Barton did state claims for relief under § 1983, he failed to show that such claims should survive a qualified immunity defense. Accordingly, his complaint must be dismissed.

## I. BACKGROUND

The following factual allegations come from Barton's amended complaint. ECF No. 14. The amended complaint is fairly vague, but at the motion-to-dismiss stage, they must be accepted as true, and all reasonable inferences must be drawn in his favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).

Barton requested the Ann Arbor Police Department's policies through the Freedom of Information Act and received them on May 14, 2021. ECF No. 14 at PageID.132. Barton asked multiple people within the Ann Arbor City Government and the Police Department to make the policies and procedures that he had received accessible on the Department's public website. *Id.* When these requests went unaddressed, Barton appeared before the City Council to make his requests in a public forum. *Id.*

On April 7, 2022, Barton joined an online meeting hosted by the Police

Department, in which the Assistant Chief directed him to City Administrator Milton Dohoney. *Id.* On April 11, 2022, Barton showed up at City Hall in an attempt to meet Dohoney, but Dohoney refused to see him. *Id.* at PageID.133. Assistant City Administrator Sara Higgins also refused to set up a meeting between Barton and Dohoney. *Id.* Barton then noticed police officers closely followed him through the building, at one point cornering him in a stairwell without explanation. *Id.* On April 12, 2022, Barton returned to City Hall without incident. *Id.*

The situation escalated on April 22, 2022, when Barton was denied access to the fifth floor of City Hall by Doug Forsyth, the Ann Arbor Safety Manager, without explanation. *Id.* Seeking answers, Barton met with Deputy City Administrator John Fournier and Assistant City Attorney John Reiser, but they "refused to give any specific reason as to why his in-person access to city services [was] being denied." *Id.* at PageID.134. And when Barton then attempted to file complaints for the denial of services, City Treasurer Michael Pettigrew refused to accept them. *Id.*

On August 30, 2022, while Barton attended a scheduled public meeting at City Hall, Detective David Reid served him with a Notice of Trespass. *Id.* The trespass notice, dated "8/33/22," stated "TAKE NOTICE: You are hereby ordered immediately to depart from and not return to" the "Ann Arbor City Hall." ECF No. 10-1, Page ID.123. It, however, further stated, "You may attend meeting subject to

the Open Meetings Act (OMA) at Larcom City Hall." *Id.*

Reid told Barton that the trespass notice was issued at the City Administrator's request[1] and that it had supposedly been served back in April, though Barton says he never received it. *Id.* Barton claims he "attempted to file complaints against the officers, but his attempts were disregarded." *Id.* at PageID.135. Barton contacted the City of Ann Arbor, which informed him that the Notice was issued on April 11, 2022,[2] at the City Administrator's request. *Id.* Barton requested information on how to challenge the notice but received none. *Id.*

Barton then claims he reach out to City Council member Jen Eyer and Leslie Stambaugh, the Chair of the Ann Arbor Human Rights Commission, but again received no response. *Id.* Barton adds that he spoke to Diana Cass, Commissioner of the Ann Arbor Human Rights Commission, about bringing a claim of wrongful discrimination, but Cass responded that discrimination claims are "not for people like you." *Id.* Barton interpreted Cass's statement to mean that the Human Rights Commission does not defend white people. *Id.*

Barton brought suit on June 16, 2023. ECF No. 1. Defendants Washtenaw

---

[1] Barton alleges in his amended complaint that he was told by both the Detective and the person he spoke with later that the trespass notice was by order of the "City Attorney." ECF No. 14 at PageID.134–35. However, the notice itself states that it was issued by request of the City Administrator. ECF No. 10-1 at PageID.123.

[2] Barton alleges that the fact that he returned to City Hall without incident on April 12 demonstrates that he had not received any trespass notice on April 11. ECF No. 12 at PageID.133.

County and Washtenaw County Prosecutors Office filed a motion to dismiss, ECF No. 9 at PageID.35, as did Defendants City of Ann Arbor and Ann Arbor Police Department, ECF No. 10 at PageID.88. Barton was directed to cure any purported deficiencies by amending his complaint, ECF No. 11, which he filed on October 4, 2023, ECF No. 14.

Barton's amended complaint adds one count alleging the violation of equal protection and one count of conspiracy to interfere with civil rights. *Id.* at PageID.139–40. It also narrows the number of defendants. *Compare* ECF No. 1 at PageID.5–7 *with* ECF No. 14 at PageID.130–31. All Defendant city employees then filed a motion to dismiss the amended complaint on October 18, 2023. ECF No. 17 at PageID.148.  The case was then transferred to the undersigned judge in April 2024.

This Court set a hearing on the Motion to Dismiss for August 27, 2024, ECF No. 23, and specifically directed the parties to "be prepared to discuss Defendants' affirmative defense of qualified immunity, particularly as to Counts II and III[3] of the amended complaint." ECF No. 25. After the hearing, this Court allowed the parties seven days to submit any supplemental briefings or materials for consideration. Defendants filed a supplemental brief on September 3, 2024, reiterating their legal arguments and attaching several exhibits refuting Barton's

---

[3] Counts II and III were Barton's most meritorious claims: First Amendment retaliation and Procedural Due Process. *See* Parts IV.C. and IV.D, *infra*.

allegations.[4] ECF No. 26. Barton did not file any additional briefing.

## II.   THRESHOLD MATTER

The crux of Barton's complaint lies in 42 U.S.C. § 1983, which requires particular "facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (quoting *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Barton's amended complaint does not identify specific counts against specific defendants, so it is liberally construed as bringing each claim against each defendant. Therefore, as a threshold matter, several claims must be dismissed against several defendants who were not alleged as being involved in the conduct giving rise to a particular claim.

### A. Count I: Unlawful Restraint on the Freedom of Speech

Barton asserts that the trespass notice unlawfully restrained his free-speech rights under the First Amendment. ECF No. 14 at PageID.136. Because no specific facts were presented that would indicate that any of the following were involved in the issuance of the trespass notice, Count I must be dismissed against these

---

[4] Defendants argue in their supplemental brief that their exhibits should be considered because "it is appropriate to take material outside the complaint into account at the motion-to-dismiss stage if the material 'utterly discredit[s]' plaintiff's version of events in the complaint." ECF No. 26 at PageID.235 (quoting *Bailey v. City of Ann Arbor*, 860 F.3d 382 (6th Cir. 2017)). This Court declines to take such exhibits into account because they need not be considered to reach the conclusion that the amended complaint must be dismissed.

defendants: John Fournier, John Reiser, Sara Higgins, Michael J. Pettigrew, Jen Eyer, Doug Forsyth, Diana Cass, and Leslie Stambaugh.

### B. Count II: First Amendment Retaliation

Barton argues that the issuance of the trespass notice was retaliatory. ECF No. 14 at PageID.137. Yet again, he fails to allege specific facts linking the retaliation to John Fournier, John Reiser, Sara Higgins, Michael J. Pettigrew, Jen Eyer, Doug Forsyth, Diana Cass, and Leslie Stambaugh. Accordingly, these Defendants will be dismissed from Count II.

### C. Count III: Denial of Due Process

Barton's due-process claim hinges on the issuance and enforcement of the trespass notice. ECF No. 14 at PageID.138. But he provides no explanation for how the following defendants played any part in the process, so they will be dismissed from Count III: John Fournier, John Reiser, Sara Higgins, Michael J. Pettigrew, Jen Eyer, Doug Forsyth, Diana Cass, Leslie Stambaugh, and David Reid.

### D. Count IV: Denial of Equal Protection of the Law

Barton also alleges racial discrimination related to his attempts to file a complaint with the Human Rights Commission. ECF No. 14 at PageID.139. But he presents no facts implicating the following defendants, so they will be dismissed from Count IV: Milton Dohoney Jr., John Fournier, John Reiser, Sara Higgins,

Michael J. Pettigrew, Jen Eyer, Doug Forsyth, Leslie Stambaugh, and David Reid.

With these dismissals, the remaining counts are:

1. Count I—Unlawful Restraint on the Freedom of Speech against Ann Arbor, Dohoney, and Reid;
2. Count II—First Amendment Retaliation against Ann Arbor, Dohoney, and Reid;
3. Count III—Violation of Due Process against Ann Arbor and Dohoney;
4. Count IV—Violation of Equal Protection against Ann Arbor and Cass;
5. Count V—Conspiracy to Interfere with Civil Rights against all; and
6. Count VI—Intentional Infliction of Emotional Distress against all.

Each will be discussed below.

### III. STANDARD OF REVIEW

Under Civil Rule 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Lambert*, 517 F.3d at 439 (6th Cir. 2008). The court may also consider documents that a defendant attaches to its motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

The complaint is sufficient if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If not, then the court must grant the motion to

dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## IV. ANALYSIS OF REMAINING CLAIMS

### A. Qualified Immunity

In their motion to dismiss, Defendants allege that they are entitled to qualified immunity based on Barton's allegations. ECF No. 17 at PageID.165. Qualified immunity prevents liability for government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Whether an official is entitled to qualified immunity depends on a two-pronged inquiry. "First a court must decide whether the facts the plaintiff has alleged or shown make up a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Second, "the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Id*. The steps may be addressed in any order. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).

A right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Although an earlier case need not have resolved the exact issue, "existing

precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Here is where courts must narrow in on the specific circumstances under which the claim arose. *al-Kidd*, 563 U.S. at 742 ("We have repeatedly told courts...not to define clearly established law at a high level of generality.").

Although qualified immunity is typically addressed at the point of summary judgment, rather than dismissal under Rule 12, if a plaintiff's allegations fail to "state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Sova v. City of Mount Pleasant*, 142 F.3d 898, (6th Cir 1998) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Indeed, the Sixth Circuit has emphasized that "qualified immunity is a threshold question to be resolved at the earliest point." *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2023). When a defendant raises a qualified-immunity defense, the plaintiff must then demonstrate why the defense should not apply. *Baker v. City of Hamilton*, 471 F.3d 601 (6th Cir. 2006).

### B. Count I—Unlawful Restriction on Protected Speech

Barton claims that the trespass notice was an unlawful restriction on his First Amendment right to freedom of speech "because it resulted in a chilling effect on [his] ability to freely voice his opinion on matters of public concern and redress his grievances to local government." ECF No. 14 at PageID.136

- 10 -

Defendants argue that Barton fails to allege facts that would demonstrate a constitutional violation, let alone that such a right was clearly established. ECF No. 17 at PageID.166. Under the circumstances, this Court will address first the question of whether the facts alleged make out a constitutional violation.

First Amendment speech claims are evaluated under a three-step inquiry: "first, we determine whether the speech at issue is afforded constitutional protection; second, we examine the nature of the forum where the speech was made; and third, we assess whether the government's action in shutting off the speech was legitimate, in light of the applicable standard of review." *Bible Believers v. Wayne Cnty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015) (citing first *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985), and then citing *Saieg v. City of Dearborn*, 641 F.3d 727, 734–35 (6th Cir. 2011)).

*Element 1: Whether Barton's speech is constitutionally protected*. The vast majority of speech is protected by the First Amendment; only that speech which falls into the categories of obscenity, defamation, fighting words, incitement, and information deleterious to national security is not. *Bible Believers*, 805 F.3d at 244 n.10. Defendants do not argue, nor do Barton's allegations suggest, that Barton's intended speech would have fallen into any of these unprotected categories. Rather, Barton alleges that he intended to speak to his local government about issues of public concern. ECF No. 14 at PageID.136. Taking this allegation as true, Barton's

speech is protected under the First Amendment.

*Element 2: Nature of the forum*. Government property may be a traditional public forum, a designated public forum, or a nonpublic forum. *Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45 (1983). Traditional public fora are places that have traditionally "been devoted to assembly and debate." *Id.* These include parks and public streets. *See Hague v. CIO*, 307 U.S. 496, 515 (1939). Designated public fora are spaces not traditionally devoted to assembly and debate but opened up by the government for use for speech. *Perry*, 460 U.S. at 45 and 46 n.7. A designated public forum may be opened to the public at large, but it may also be restricted "for use by certain speakers, or for the discussion of certain subjects." *Cornelius*, 473 U.S. at 802.

By contrast, a nonpublic forum is a space owned by the government that is not a traditional public forum, nor has it been designated as a public forum by government action. *Miller v. City of Cincinnati*, 622 F.3d 524, 535 (6th Cir. 2010). Access to a nonpublic forum "can be restricted as long as the restrictions are 'reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view.'" *Cornelius*, 473 U.S. at 800 (quoting *Perry*, 460 U.S. at 46).

Defendants argue that City Hall, from which Barton was barred, is a nonpublic forum. ECF No. 17 at PageID.169-170. Barton response is devoid of

any forum analysis. He simply rejects that City Hall is a nonpublic forum without presenting any allegations or counterargument on the matter, stating merely that the issue is "ultimately going to need to be [resolved] by this Court, not the Defendants simply through their fiat." ECF No. 20 at PageID.209.

"[T]he First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *U. S. Postal Serv. v. Council of Greenburgh Civic Associations*, 453 U.S. 114, 129 (1981). Further, "municipal buildings are not traditionally regarded as forums for expressive activity." *Hansen v. Williamson*, 440 F. Supp. 2d 663, 679 (E.D. Mich. 2006) (citing *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 966 (9th Cir. 2002), *abrogated on other grounds by Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)). Rather, to receive a heightened standard of review on a motion to dismiss, a plaintiff must allege that the government created a public forum by "intentionally opening up a nontraditional forum for public discourse." *Cornelius*, 473 U.S. at 802. Here, Barton failed to allege any facts that could support an inference that the City of Ann Arbor opened any area of City Hall for public discourse, except for meetings subject to the Open Meetings Act that Barton was still permitted to attend. As such, this Court applies the standard of review for nonpublic fora: the restriction must be reasonable and not solely intended to suppress the speaker's point of view.

*Element 3: Whether the Government's restrictions on speech were*

- 13 -

*reasonable*. Barton, in his amended complaint, does not specifically allege that the trespass notice was an unreasonable restriction on his speech. Rather, he simply alleges that the trespass notice was "in retaliation for [his] exercise of protected speech and activity." ECF No. 14 at PageID.136. He also states that the notice was "not narrowly tailored and does not serve a significant government interest," *id.,* which is not the applicable standard for evaluating whether the trespass notice improperly infringed his constitutional right to free speech.

Because Barton fails to allege any facts that would allow this Court to infer that the trespass notice constituted an unreasonable restriction on his speech, he has failed to state a claim for an unlawful restriction of his First Amendment rights. [5] Moreover, the facts that this Court can consider at this stage, such as the trespass notice itself, suggest that the restrictions imposed on Barton were reasonable. For example, the trespass notice allows Barton to "attend meetings subject to the Open Meetings Act" at City Hall, which means that Barton has alternative avenues for speech. ECF No. 10-1 at PageID.123. This carveout, which still allows Barton to express his viewpoint in a more appropriate forum, as well as the language in the notice that a "prior disturbance" preceded the issuance of the trespass notice, is persuasive that the restriction on Barton's access to city hall was reasonable and

---

[5] Barton's allegation that the trespass notice was issued in retaliation for his protected speech states a claim for First Amendment retaliation, not for unlawful restriction of speech. Barton's retaliation argument is addressed as to Count II in Part IV.C., *infra*.

not an unlawful restraint on his First Amendment free speech rights based solely on trying to limit his point of view. *Id.*

Absent any showing or argument that the limitations imposed by the trespass notice regarding Barton's presence in City Hall are unreasonable, Count I must be dismissed as to all defendants for failing to state a claim that the trespass notice violated Barton's First Amendment right to free speech.

### C. Count II—First Amendment Retaliation

Defendants also argue that they are entitled to qualified immunity as to Barton's First Amendment retaliation claim. ECF No. 17 at PageID.165, 170.

*Do the allegations make out a constitutional right?* To succeed on a First Amendment retaliation claim, a plaintiff must show "(1) that she was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights." *Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 492 (6th Cir. 2006) (quoting *Strouss v. Michigan Dep't of Corr.*, 250 F.3d 336, 345 (6th Cir. 2001)).

Here, Barton was engaged in a constitutionally protected activity in petitioning his government for policy changes. As discussed above, he had made

FOIA requests for Ann Arbor Police Department policies and procedures, and he had attended public meetings where he requested that such policies be more visible to the public. ECF No. 14 at PageID.132. He also sufficiently alleged that the government's action in issuing the trespass notice caused him injury that would chill a person of ordinary firmness from continuing to engage in the activity. *Id.* at PageID.137. Finally, he alleges that the trespass notice was "substantially motivated by [his] exercise of Constitutionally protected conduct." *Id.*

Barton alleges that when he contacted the City of Ann Arbor about his trespass notice, he was told that the order was issued on April 11, 2022. ECF No. 14 at PageID.135. This was four days after he participated in the Police Department's online meeting and the same day that he attempted to speak with the City Administrator. ECF No. 14 at PageID.132–33. Defendants argue that because the actual trespass notice was served in August, the elapsed time between the protected speech and the alleged retaliation is too great to prove causation. ECF Nos. 17 at PageID.171; 26 at PageID.230–32. However, at the motion-to-dismiss stage, this Court takes the allegations in the complaint as true and draws all reasonable inferences from them. *See Lambert*, 517 F.3d at 439. Based on the allegations, it is possible that the actual time between the protected speech and issuance of the trespass notice was only a matter of days, not months. Therefore, Barton's allegations support a reasonable inference that the trespass order was

motivated at least in part by Barton's exercise of his First Amendment rights.

*Was the constitutional right clearly established?* However, even assuming that the trespass notice was issued in retaliation, Barton must demonstrate that this violated clearly established law. *See Baker v. City of Hamilton*, 471 F.3d 601 (6th Cir. 2006) (When a defendant raises a qualified-immunity defense, the burden shifts to the plaintiff to demonstrate that qualified immunity does not apply.) However, Barton has failed to point to a single binding case that would support a finding that issuing a trespass notice or banning Barton from non-public areas of City Hall is a clearly established constitutional violation. Indeed, Barton failed to address qualified immunity at all in his response. ECF No. 20. Even after this Court ordered a hearing and specifically directed the parties to be prepared to discuss qualified immunity, ECF No. 25 at PageID.225, Barton could not point to a single binding case that would support a finding that the Defendants violated clearly established law. This Court further gave the parties an opportunity to file supplemental briefing after the hearing addressing the same question. Barton filed nothing.

Additionally, this Court independently was unable to find any Sixth Circuit case law directly on point. The closest analogue was *Rudd v. City of Norton Shores, Mich.*, 977 F.3d 503 (6th Cir. 2020). There, the Sixth Circuit found that the plaintiff stated a First Amendment retaliation claim when he alleged that, in

- 17 -

response to his filing of a citizen complaint against the local police department, the defendant city officers and officials conspired to hold him in criminal contempt for violating an expired protection order. *Id.* However, *Rudd* not only presents much more dramatic adverse action by the city employees than here, but it also involved more specific allegations as to causation. *See id.* at 515–16 (finding Rudd "asserts plenty of facts" plausibly alleging a causal connection, including the defendant city employees making actual references to Rudd's "disparaging" and "defamatory" citizen complaint while taking adverse actions against him). Taking seriously the responsibility "not to define clearly established law at a high level of generality," this Court declines to find that *Rudd* is sufficiently analogous to place the issue here "beyond debate." *al-Kidd*, 563 U.S. at 741–42.

At bottom, Barton has failed to meet his burden to show that his claim should survive qualified immunity. This Court is unaware of any authority that would support a finding that the right not to be issued a trespass notice, or prohibiting someone from non-public areas of City Hall after engaging in protected speech is clearly established. As such, this Court must grant qualified immunity as to Count II and the claim must be dismissed.

### D. Count III—Deprivation of Due Process

*1. Procedural Due Process*

Barton alleges that the trespass notice violated his procedural due process

rights because he has "a liberty interest in directing and participating in self-governance through his elected officials and on public property," and that defendants infringed on this interest without providing "adequate notice or opportunity to contest…prior to or after" the notice was issued. ECF No. 14 at PageID.138.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). To state a claim for a violation of procedural due process, a plaintiff must allege that they were (1) deprived of a liberty or property interest (2) without adequate process. *See Bazzetta v. McGinnis*, 430 F.3d 795 (6th Cir. 2005) (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Although "due process is flexible and calls for such procedural protections as the particular situation demands," *Morrisey v. Brewer*, 408 U.S. 471, 481 (1972), a state generally must "provide a person with notice and an opportunity to be heard" before depriving them of a liberty interest. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014) (quoting *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005)).

*Whether Barton was deprived of a liberty interest.* The Supreme Court has traditionally construed "liberty" broadly to include not only "freedom from bodily

constraint" but also those freedoms determined to be "essential to the orderly pursuit of happiness by free men." *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972) (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). This encompasses those rights enshrined in the First Amendment, including free speech and the right "to petition the Government." U.S. CONST. amend. I; *see also Jackson v. City of Columbus*, 194 F.3d 737, 749 (6th Cir. 1999) (citing *Adkins v. Bd. of Educ. of Magoffin Cnty., Ky.*, 982 F.2d 952, 955 (6th Cir. 1993)), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 ("First Amendment rights may constitute a liberty interest under the Due Process Clause.").

Defendants argue that Barton fails to allege a liberty interest because the right he alleges—a right to have his government officials listen and respond to his complaints—is not a right at all. ECF No. 17 at PageID.173. But reading Barton's claim generously, he asserts a liberty interest through his rights to free speech and to petition the government. The forum analysis as to Count I, *supra*, does not negate that interest. Even if the government properly limits protected speech, a citizen may still be entitled to *some* process under the Fourteenth Amendment to challenge that limitation. *See Roth*, 408 U.S. at 575 n.14 ("When a State would directly impinge upon interests in free speech or free press, this Court has on occasion held that the opportunity for a fair adversary hearing must precede the

action, whether or not the speech or press interest is clearly protected under substantive First Amendment standards.").

Construing Barton's allegations favorably, Barton claims that he had a right to petition the government, not that he had a right to an actual meeting with government officials. To the extent that the due process claim relates to Barton's allegation that the trespass notice prevented him from exercising his First Amendment rights, Barton has stated enough facts to support a plausible inference that he was deprived of the liberty interest. However, this Court agrees with Defendants that Barton does not have a liberty interest in unfettered access to City Hall or its employees. Barton can only state a claim for a procedural due process violation as to deprivation of his First Amendment rights. *Cf. Cyr v. Addison Rutland Supervisory Union*, 955 F. Supp. 2d 290, 295–296 (D. Vt. 2013).

*Whether Barton was afforded adequate process.* Barton claims that he was not provided with adequate notice because he "was told conflicting stories" regarding the notice and that he "never received information on what he even allegedly did to warrant this Trespass." ECF No. 20 at PageID.211. Barton also alleges that he was not given an opportunity to contest or appeal the trespass notice. ECF No. 14 at PageID.138.

Defendants argue that this claim fails because Barton did not name any specific defendants who had any part in the decision to issue the trespass notice

against him, and the notice clearly gave instructions for appealing the decision. ECF No. 17 at PageID.173–74. But upon considering the actual trespass notice, it is clear that Barton alleges that Defendant Dohoney made the decision to issue the trespass notice. *See* ECF No. 10-1 at PageID.123 ("At the direction of the City Administrator").

As for an opportunity to be heard, Defendants are correct that the trespass notice itself provides a method of appeal: "If the City of Ann Arbor is the owner of the property, you may send your appeal to the City Administrator's Office. . . or email to trespassappeal@a2gov.org." ECF No. 10-1 at PageID.123. However, Barton alleges that when he attempted to take advantage of the appeals process, he was unable to do so. ECF No. 14 at PageID.135 ("After Plaintiff was served the Notice of Trespass, he contacted the City of Ann Arbor, requesting the basis for the Trespass. . . . Plaintiff inquired about the procedure to challenge the no trespass order or otherwise remedy the situation but was denied an explanation."). Further, such an avenue for review, even if effective, would force Barton to appeal to Dohoney, when Barton alleges that the trespass notice was at Dohoney's direction in the first place. ECF No. 10-1 at PageID.123.

The allegations of mixed messages about the timing and basis for the trespass notice, as well as Barton's inability to access an impartial review all support a reasonable inference that Dohoney, as City Administrator, directed that

the trespass notice be issued without proper notice to Barton, and then prevented Barton from having an opportunity to appeal the notice. Barton therefore alleged sufficient facts to state a claim for a violation of his right to procedural due process against Dohoney.

*Whether this procedural-due-process right was clearly established.* Like Count II, this Court gave Barton at least two opportunities to satisfy the "clearly established" prong of the qualified-immunity analysis: first at the August 27, 2024 hearing, and then through post-hearing supplemental briefing. But at both times, Barton did not present this Court with *any* binding authority suggesting that a person is entitled to due process based on a First Amendment liberty interest in access to public buildings. He further presented no authority articulating what amount of process is required to deprive such an interest, if it exists.

The most analogous case this Court could find was *Hicks v. Crowley*, No. 2:22-CV-2204, 2023 WL 348229 (S.D. Ohio Jan. 20, 2023). In *Hicks*, the district court found that the plaintiff stated a due process claim when he alleged that he was denied of his First Amendment right to attend public hearings without notice, an opportunity to be heard by an unbiased decisionmaker, or an ability to appeal or review the ban. *Id.* However, *Hicks* is neither binding (and thus could not, on its own, "establish" a right) nor is it factually similar to this case. Unlike the plaintiff in *Hicks*, Barton may still attend public meetings and hearings—a significant fact

- 23 -

which undercuts his allegations that he was deprived of his liberty interest in petitioning the government. *See* ECF No. 10-1 at PageID.123. Without U.S. Supreme Court or Sixth Circuit cases on point, particularly if such cases are not even factually analogous, this Court may not find that the Defendants' actions violated clearly established law. *See al-Kidd*, 563 U.S. at 741–42 (granting qualified immunity where there was neither "controlling authority" nor "what is necessary absent controlling authority: a robust 'consensus of cases of persuasive authority'") (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

True, Barton's allegations might raise some due process concerns. At first blush, it seems improper to ban a citizen from a public building and then force him, as his only recourse, to appeal that decision to the same official who originally banned him. Without qualified immunity looming in the backdrop, this might have been enough to state a procedural due process claim. However, these facts, though concerning, cannot overcome the "clearly established" requirement. Put otherwise, Barton needed better law, not better facts. Because Barton could not provide any such authority despite having ample opportunities to do so, this Court must grant qualified immunity and dismiss his procedural due process claim.

### 2. Substantive Due Process

To state a claim for violation of substantive due process, "the plaintiff must allege 'that an individual has been deprived of a particular constitutional guarantee,

- 24 -

or that the government has acted in a way that 'shocks the conscience.'" *Howard v. Livingston Cnty., Michigan*, No. 21-1689, 2023 WL 334894, at *11 (6th Cir. Jan. 20, 2023) (cleaned up) (quoting *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 547 (6th Cir. 2012)).

Barton seems to allege a violation under the first prong, claiming that Defendants "infringed on his fundamental liberty interest and property interests." ECF No. 14 at PageID.138. However, the Supreme Court has clearly held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Barton's allegations do not suggest that any fundamental right outside of the First Amendment was implicated by Defendants' conduct. Therefore, a substantive due process claim arising out of the alleged First Amendment allegations would be duplicative. These claims must only be resolved under First Amendment standards, as they were above.

Alternatively, Barton could be alleging a substantive due process violation on the theory that Defendants acted in a way that would shock the conscience. However, the Sixth Circuit has refused to apply this prong separately where a

claim already alleges a violation of an enumerated constitutional right. *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (1999). Because Barton fails to allege facts suggesting that Defendants violated an unenumerated constitutional right, he fails to state a substantive due process claim. It is thus unnecessary to determine whether any such right was clearly established for purposes of qualified immunity. The substantive due process aspect of Count III must be dismissed.

### E.  Count IV—Deprivation of Equal Protection

Barton claims that Defendant Cass violated his equal-protection rights by refusing to let him file a complaint with the city's Human Rights Commission because of his white race. ECF No. 14 at PageID.139. He bases this conclusion on the alleged fact that Cass told him when he attempted to file a complaint that discrimination claims are "not for people like you." *Id.* at PageID.135.

While these allegations could suggest discriminatory intent, alone they are insufficient to state an equal protection claim. Namely, for such a claim, "a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 298 (6th Cir. 2006)). The Sixth Circuit has held that

this is a "threshold element" essential to survive a motion to dismiss. *Id.*

Barton, however, has failed to allege any facts suggesting that he was treated disparately. He has not alleged that anyone else was *ever* able to file a complaint with the Human Rights Commission in similar circumstances, regardless of their race. Because the facts alleged do not suggest that Barton was treated differently as compared to similarly situated persons, he has failed to state an equal protection claim. Count IV therefore must be dismissed as to Defendant Cass and the City of Ann Arbor.

### F. Count V—Conspiracy to Interfere with Civil Rights

Barton claims that all named defendants, as well as some unknown and unnamed others, conspired to interfere with his civil rights under 42 U.S.C. § 1985. ECF No. 14 at PageID.140. Defendants argue that such a claim is barred by the intracorporate conspiracy doctrine. ECF No. 17 at PageID.176. This Court agrees.

The intracorporate conspiracy doctrine has "consistently applied [to] allegations of conspiracy under the Civil Rights Act," including § 1985 claims. *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991) (quoting *Doherty v. American Motors Corp.*, 728 F.2d 334, 339 (6th Cir. 1984)); *see also Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839–841 (6th Cir. 1991) (holding that the intracorporate conspiracy doctrine applies to § 1985(3) claims so long as the defendants were acting within the scope

of their employment). Under the doctrine, when "all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Hull*, 926 F.2d at 510.

Here, each municipal officer is alleged to have been acting in the scope of their employment, working as part of a single entity—the City of Ann Arbor. Even if they worked together to deprive Barton of his rights, they would have worked as that single entity. No conspiracy could have been formed. Therefore, the claim is barred under the intracorporate conspiracy doctrine.

Even if the claim was not barred, it would still fail under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss for a § 1985(3) violation, "the plaintiff must [allege] (1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen." *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996). The plaintiff must also allege that the conspiracy was "motivated by racial, or other class-based, invidiously discriminatory animus." *Bass v. Robinson*, 167 F.3d 1041 (6th Cir. 1999).

Barton has not pled facts suggesting a plausible a conspiracy to deprive him of his rights. None of the allegations suggest that there was an "agreement between

two or more persons to injure another by unlawful action," as is required under §

1985. *See Gerber v. Herskovitz*, 14 F.4th 500, 511 (6th Cir. 2021) (quoting *Hooks*

*v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). Barton does not even allege that

any of the named defendants ever spoke to one another. Accordingly, Count V

must be dismissed against all named defendants.

### G. Count VI—Intentional Infliction of Emotional Distress

Barton claims that all named defendants are liable for intentional infliction

of emotional distress (IIED) under Michigan law.

In Michigan, an IIED claim must allege "(1) extreme and outrageous

conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional

distress." *Chungag v. Wells Fargo Bank, N.A.*, 489 F. App'x 820, 825 (6th Cir.

2012). In his amended complaint, Barton makes the conclusory allegation that

Defendants' conduct: "was extreme, outrageous, and of a character not to be

tolerated by a civilized society," "was reckless and/or malicious and lacked good-

faith," and "resulted in severe and serious emotional distress." ECF No. 14 at

PageID.141. Although the amended complaint does set out the elements of IIED, it

must do more than provide "a formulaic recitation of the elements of a cause of

action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Of the elements of an IIED claim, "extreme and outrageous conduct" is a

very high bar to meet. "Liability does not extend to mere insults, indignities,

threats, annoyances, petty oppressions, or other trivialities." *Graham v. Ford*, 604 N.W.2d 713, 714 (Mich. Ct. App. 1999) (citing *Doe v. Mills*, 536 N.W.2d 824, 833 (Mich. Ct. App. 1995)).

Courts applying Michigan law have dismissed IIED claims for failure to allege outrageous conduct where a visibly ill prison inmate was denied access to a physician for months, *Jones v. Muskegon Cnty.*, 625 F.3d 935, 938–39 (6th Cir. 2010), where a defendant city attorney referred to the plaintiff's daughter as a "crack and heroin whore" in a work email, *Hilton v. Mish*, 720 F. App'x 260, 267 (6th Cir. 2018), and where defendants allegedly conspired to contaminate Flint's water, *In re Flint Water Cases*, 453 F. Supp. 3d 970, 1001 (E.D. Mich. 2020). Barton, by contrast, was handed a piece of paper.

Nothing in the amended complaint suggests that any Defendant acted in a manner that could be described as "extreme and outrageous." Despite the distress that Barton's encounters with city officials seemed to have caused him, such distress is not actionable here. The IIED claim therefore must be dismissed.

## H. *Monell* Liability

A municipality may not be held liable for a constitutional violation committed by its employees unless the plaintiff can show that a policy or custom of that government caused the injury. *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658,

694 (1978)). A policy or custom may be demonstrated in four ways: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Lipman*, 974 F.3d at 747 (6th Cir. 2020) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

Although most of Barton's claims will be dismissed under Civil Rule 12(b)(6) for failure to state a claim, the two claims for which qualified immunity will be granted—First Amendment retaliation and the procedural-due-process violation—could still provide a basis for *Monell* liability if Barton adequately alleged establishing facts. Defendants, however, argue that Barton has failed to plausibly allege "any official policy of the City, any action taken by an official with decision-making authority, or any police of inadequate training or supervision or a custom of tolerance of acquiescence to federal violations that was the 'moving force' behind any violation of his constitutional rights." ECF No. 17 at PageID.178.

Defendants are correct—Barton fails to allege any facts that would support his conclusory assertions that "[t]he policy statements, regulations, or decisions adopted and promulgated by the Defendants were the moving force behind the [constitutional] violations." ECF No 14 at PageID.137–40. Rather, he simply

- 31 -

claims that "Defendant City of Ann Arbor's official policy or legislation; action(s) authorized by a designated decisionmaker; failure to train or supervise employees; and/or a custom of acquiescence in rights violations were the moving force behind the injuries Plaintiff suffered." *Id.* at PageID.131. These conclusory allegations are insufficient to establish liability under *Monell*. *Jocke v. City of Medina, Ohio*, No. 22-3954, 2023 WL 5167326, at *8 (6th Cir. Aug. 11, 2023) ("Plaintiffs fail to allege, outside of conclusory statements, facts that establish the existence of an illegal policy or law. . . . Nor does the complaint identify persons with final decision-making authority that ratified the action, let alone any existing custom of, tolerance of, or acquiescence to violating federal rights. We therefore find that Plaintiffs failed to plead facts sufficient to sustain a *Monell* claim.") (citations omitted). Without any facts supporting Barton's *Monell* argument, he cannot establish liability under *Monell*. *Id.*

Even if this Court allowed Barton to (again) amend his complaint based on his response, his *Monell* theory would still fail. Barton argues that the basis for the municipal liability was the fact that the trespass notice was ordered by Defendant Dohoney, who was the "final decision maker" on the matter. ECF No. 20 at PageID.202. Barton also argues that the city is liable for "following policy, practice, and procedures." ECF No. 20 at PageID.204. However, Barton does not support either assertion with specific facts.

Barton's primary *Monell* argument is that Dohoney was granted unreviewable power to issue trespass notices, making Ann Arbor liable for his "final decisions." ECF No. 20 at PageID.202. This argument, however, misunderstands the definition of a final decisionmaker under *Monell*. "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on the exercise of that discretion." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82 (1986). Rather, the official must have been granted authority to make final government *policy* as to the activity in question. *Id.* Barton has failed to allege that Dohoney ordered the trespass notice to issue under any specifically delegated policy-making authority. Therefore, this theory will not assign municipal liability.

In his response—outside of the amended complaint—Barton attempts to save his *Monell* theory by asserting that "[w]hen there is no written policy, it is the practice of the City to have the administrator in charge of making official decisions." *Id.* But without any facts to support such a conclusory assertion, this allegation is also insufficient to assign municipal liability under a "final decisionmaker" theory.

The remaining theories of municipal liability also do not apply to the facts as alleged. Barton has failed to allege any facts supporting an inference that there was a facially illegal policy in place in Ann Arbor, that city officials and officers had

- 33 -

been insufficiently trained or supervised, or that there was a custom of tolerance or acquiescence to federal violations. *See* ECF No. 14. His attempt to establish liability under *Monell* thus fails.

## V. CONCLUSION

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 17, is **GRANTED**.

Further, it is **ORDERED** that Plaintiff's amended complaint is **DISMISSED WITH PREJUDICE**.

**This is a final order and closes the above-captioned case.**

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated:  9/13/2024

- 34 -